# BAKER *v.* WARNER.

# SAME *v.* SAME.

## ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

Nos. 41, 42.   Argued November 5, 1913.—Decided December 22, 1913.

Motions in arrest of judgment are not favored.

In considering a motion in arrest the plaintiff will be given the benefit of every implication that can be drawn from the pleading liberally construed; and even if the allegations are defectively set forth or improperly arranged, if they show facts constituting a good cause of action the motion will be denied.

Where the defendant in a suit for libel is put on notice of extrinsic facts surrounding the publication, and does not demur but joins issue and goes to trial, a verdict against him cures the defects in the complaint and a motion to arrest should not be granted.

The strict rules announced in earlier decisions in this respect have been modified by modern and more liberal rules of pleading.

Where plaintiff in error in this court succeeded in the trial court and was reversed in the intermediate appellate court, this court is not limited to a consideration of the points presented but must enter the judgment which should have been rendered by the court below on the record before it.

Although this court reverses the order to arrest the judgment, it affirms the ruling of the intermediate appellate court that there should be a new trial on account of erroneous instructions on material matters.

Where the words are not libelous *per se* and can only be construed as such in the light of extrinsic facts, it is for the jury not only to determine whether the extrinsic facts exist but also whether the words have the defamatory meaning attributed to them.

36 App. D. C. 493, reversed.

THE plaintiff, Baker, United States District Attorney for the District of Columbia, sued the defendant, Warner, for libel.  Briefly stated, the complaint charges that—

The Washington Jockey Club owned a race track in

the District where races were run and bets were made and in January, 1908, the plaintiff, as District Attorney, had obtained from the Grand Jury an indictment charging one Walters with betting at this race track, contrary to the statute against gaming in the District. A demurrer was filed which was sustained on March 11, 1908,—the court holding that the laying of bets on horse races, at this track, was not a violation of the act of Congress, which as appears by reference to the statute (March 3, 1901, c. 854, 31 Stat. 1189, 1331, § 869) only prohibited such betting and bookmaking within one mile of the boundaries of the cities of Washington and Georgetown. The plaintiff immediately took an appeal from this judgment in order that the Court of Appeals might determine whether such betting at such place was a violation of the gaming law of force in the District.

Shortly after the appeal, the Spring Meet of the Jockey Club began, being advertised to continue until April 14. On the opening days of the Meet there was book-making and betting; but the complaint alleges that the plaintiff "conforming himself, as it was his duty to do, to the law as judicially construed by the Supreme Court of the District, did not issue warrants for the arrest of or present to the Grand Jury any persons for betting on the horse races."

It is further alleged that, at this time, Warner was a candidate against Pearre for the nomination for Congress from Maryland, and, on March 28, Warner composed and published, of and concerning the plaintiff and of and concerning the office of the plaintiff, in a Washington newspaper, a certain false and defamatory libel. The article need not be set out at length, but the communication, after characterizing a speech by his opponent as undignified, proceeded to say that it was not wanting in dignity so much as for a Judge of the District, "who, with the United States District Attorney (meaning the

plaintiff) went to Rockville (meaning the town of Rockville, County of Montgomery, State of Maryland) last Saturday (meaning Saturday, the 21st day of March, A. D. 1908) to attend a conference of Mr. Warner's (meaning defendant's) enemies and determine what ammunition was needed to defeat him.

"The question now is, Where does the money come from in the contest against Mr. Warner? (meaning the defendant).

"How about the race track?

Lawyer."

"meaning thereby, . . . that the said plaintiff entered into a conference with others for the purpose of determining what funds were necessary, and how same should be raised, to be used in the campaign on behalf of Pearre, and meaning . . . that the plaintiff was and is corrupt, in not presenting to the Grand Jury and prosecuting before the courts of the District, persons laying bets upon the contests at the race track, in consideration of contributions of money in the contest against the defendant from some company or person interested in the race track or the contests carried on thereon."

The defendant filed a general denial, and, after a trial, there was a verdict in favor of the plaintiff. Motions for a new trial and in arrest of judgment were overruled and the case taken to the Court of Appeals, which held not only that reversible error had been committed, but that the judgment should have been arrested. In No. 41 the case is here on a writ to review that ruling. To avoid any question as to the finality of that judgment of the Court of Appeals plaintiff sued out another writ of error (No. 42) after the judgment had been arrested in the trial court.

*Mr. Frank J. Hogan* and *Mr. Henry E. Davis* for plaintiff in error.

*Mr. W. C. Sullivan* and *Mr. J. J. Darlington* for defendant in error.

MR. JUSTICE LAMAR, after making the foregoing statement of facts, delivered the opinion of the court.

The plaintiff, who was United States District Attorney for the District of Columbia, sued the defendant in an action for libel and recovered a verdict for $10,000. The Court of Appeals (36 App. D. C. 493) held that the judgment should have been arrested, for the reason that the publication was not libelous *per se* and was not shown to be defamatory by any averment of fact in the Inducement or in the Colloquium.

The publication was not libelous *per se.* The meaning of the article and person to whom it referred were so ambiguous that, in order to constitute a cause of action, it was necessary to set out extrinsic facts, which, when coupled with the words, would show that the writer charged the plaintiff with corruption in office. Accordingly, the plaintiff in the Inducement averred that he was District Attorney, charged with the duty of prosecuting violators of the law against gaming, and had procured an indictment against one for betting at the Washington Jockey Club, which indictment had been quashed and, pending the appeal and conforming to the ruling of the court, he had instituted no other prosecutions: That, under these circumstances, the defendant had published of and concerning the plaintiff, the article which is set out in the complaint.

There were general allegations that the article was written concerning the plaintiff in his office as District Attorney, together with general statements in the Innuendo that the defendant meant to charge him with corruption in office. There was, however, no distinct averment as to the meaning of those particular phrases in the publi-

cation on which the cause of action was really based. The Court of Appeals thereupon sustained the defendant's contention that the complaint was defective because of the failure specifically to allege what, as a fact, the words meant and to whom they referred. It further held that the absence of such specific averments was not supplied by the general statement in the Innuendo that the defendant meant to charge the plaintiff with a crime. This was based on the rule that it is not the office of the Innuendo to set out facts, but rather to explain what is ambiguous, or to state a conclusion which, to be effective, must be supported by averments, definitions, references or other facts alleged in traversible form in Inducement and Colloquium. It is, however, unnecessary to discuss the sufficiency of the complaint which, even if defective, was amendable. The defendant did not demur, but joined issue, the case was tried by a jury, a verdict for the plaintiff was rendered, judgment was entered and the defendant then moved in arrest.

Such motions are not favored. In considering them, courts liberally construe the pleadings, giving the plaintiff the benefit of every implication that can be drawn therefrom in his favor. Sentences and paragraphs may be transposed. The allegations in one part of the complaint may be aided by those in another and if taken together, they show the existence of facts constituting a good cause of action, defectively set forth or improperly arranged, the motion in arrest will be denied.

In the present case the defendant was put on notice of the extrinsic facts surrounding the publication. The statements in the Innuendo, even if misplaced, may after verdict, be treated as substantive allegations of fact given by transposition, their proper position in Inducement or Colloquium. The verdict cured the defects, if any, in the complaint and made it improper to arrest the judgment. *Stanley* v. *Brit*, 8 Tennessee, 222; *Mc-*

*Caughry* v. *Wetmore*, 6 Johns. 82; *Brittain* v. *Allen*, 13 N. Car. 120, 124; *Tuttle* v. *Bishop*, 30 Connecticut, 80; *Nestle* v. *Van Slyck*, 2 Hill, 282. In answer to these decisions the defendant cites *Ryan* v. *Madden*, 12 Vermont, 51, 55, and other cases, to support his contention that the motion in arrest should have been granted. But those decisions announce what, in *Bloss* v. *Toby*, 2 Pick. 320, was admitted to be a hard and technical rule—one which, we think, has been modified by modern and more liberal rules of pleading and practice in the Federal courts and in those of most of the States.

The plaintiff, Baker, had a judgment in the trial court. The defendant, Warner, took the case to the Court of Appeals on various grounds, most of which were sustained. The plaintiff then brought the case here, assigning error on some of those rulings but not on others. We are not limited, however, to a consideration of the points presented by the plaintiff, but, this being a writ of error from an intermediate appellate tribunal, must enter the judgment, which should have been rendered by the court below on the record then before it.

While we reverse the order to arrest the judgment, we affirm the ruling of the Court of Appeals that there was an erroneous instruction on a matter material to the case and harmful to the defendant. The trial judge, summarizing the facts, charged that if the jury found from the evidence that plaintiff was District Attorney; that in the District there was a race track where races were run and bets were made, which some claimed could have been prevented by prosecutions instituted by the plaintiff and that he did not, in fact, prosecute such persons; if Warner was a candidate for Congress and the plaintiff supported Pearre, his opponent, and the defendant, Warner, wrote and procured the publication of the article set out in the complaint, "then you are instructed, as matter of law, that the said article is libelous and your

verdict should be for the plaintiff, and the only question for your determination is what amount of damages the plaintiff is entitled to recover by reason of the publication of said article."

This was error, since it was for the jury and not for the court to determine the meaning of ambiguous language in the published article. Where words are libelous *per se* the Judge can so instruct the jury, leaving to them only the determination of the amount of damages. Where the words are not libelous *per se* and, in the light of the extrinsic facts averred could not possibly be construed to have a defamatory meaning, the Judge can dismiss the declaration on demurrer, or, during the trial, may withdraw the case from the jury. But there is a middle ground where though the words are not libelous *per se*, yet, in the light of the extrinsic facts averred, they are susceptible of being construed as having a defamatory meaning. Whether they have such import is a question of fact. In that class of cases the jury must not only determine the existence of the extrinsic circumstances, which it is alleged bring to light the concealed meaning, but they must also determine whether those facts when coupled with the words, make the publication libelous. *Van Vechten* v. *Hopkins*, 5 Johns. 219. The meaning of the words was in dispute, and as that issue of fact was not submitted to the triers of fact, a new trial must be ordered.

This conclusion makes it unnecessary to consider the other questions in the case.

*The judgments of the Court of Appeals are reversed and the cases are remanded to that court with directions to reverse the judgments of the Supreme Court of the District of Columbia and to remand the case to that court with directions to grant a new trial and for further proceedings in conformity with this opinion.*